UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELLA ABADIR,

          Plaintiff,

vs.

CENTER ONE, LLC,

          Defendant.

14-CV-0855WMS(HKS)

MEMORANDUM IN SUPPORT
OF MOTION FOR AN ADVERSE
INFERENCE

## INTRODUCTION

As is set forth in detail in the Defendant's motion for summary judgment and Plaintiff's responding papers, Plaintiff Ella Abadir's employment by Center One was marred by numerous accusations of misconduct by her direct supervisor, Holly Donohue, which resulted in more than one investigation by Defendant's Human Resources staff, and included her termination from, employment in June 2012[1].

In discovery in this matter, and in its motion for summary judgment, Defendant has produced numerous document that support its contention that Plaintiff was accused of misconduct and a poor attitude by Ms. Donohue, and a smaller number of documents that Ms. Donohue's supervisor credited Ms. Donohue's reports and discredited the Plaintiff's denials of those reports. Defendant has relied on this evidence to establish that any adverse actions Plaintiff experienced at work resulted from her own conduct.

As is discussed *below*, Plaintiff contends that Defendant failed to preserve, or destroyed, evidence that would have supported Plaintiff's version of the facts, thereby depriving Plaintiff of

---

[1] Plaintiff was reinstated with backpay approximately two weeks after the June 2012 discharge.

1

the ability to refute Defendant's contentions, and prove her case.

## FACTUAL BACKGROUND

Plaintiff was formally employed by Defendant from February of 2010 until November of 2016, however her last day of work was in May 2013. *See*, Item No. 31, Def'ts Statement of Undisputed Material Facts, ¶¶ 2, 119, 134.

Among the charges leveled at Plaintiff in Defendant's motion for summary judgment are the allegation that Plaintiff "was known to fall asleep and surf the internet during work hours." Item 31, ¶ 85. Additionally, Defendant's motion papers contain repeated assertions that Plaintiff behaved inappropriately toward her subordinates, *Id*, ¶¶ 43-59, and was insubordinate toward her superiors. Item 35, ¶¶ 25-27; Item 36, ¶ 15, 28.

In June 2012, Plaintiff was discharged from employment after an "investigation" of 33 alleged complaints that had purportedly been received from Plaintiff's subordinates within an eighteen-month period. Item No. 31, ¶¶ 51-53. Discovery has revealed that that 32 of the 33 complaints were gathered in the two-month period immediately preceding her discharge. Documents received in discovery also establish that the majority of the alleged complaints are recorded only in handwritten notes written by Plaintiff's supervisor, Holly Donohue, whom Plaintiff contends deliberately undermined and harassed Plaintiff throughout the entire duration of Plaintiff's employment due to an age-based bias against Plaintiff. There are no signed statements from the majority of the purported complainants.

When questioned in June 2012, Plaintiff disputed whether any valid complaints had actually been obtained. She was neither shown the complaints, nor provided details about them. Plaintiff did not acquiesce to the accusations, but instead disputed Ms. Donohue's assertion that "none of [her] employees liked her," Item 43, ¶ 136, and argued the some of her subordinates

liked to complain about "doing their jobs or following company policy," *Id.*, ¶ 153.  Apparently in response to what it viewed as her intransigence, Defendant fired Ms. Abadir.  It appears that she was discharged because she refused to admit to charges she did not believe were true.

According to Defendant's witnesses, Defendant's Human Resources Department maintained extensive files of its investigations. Item 44, 56-58; Richmond Affirmation in Support of Motion for an Adverse Inference, Ex. A, pp. 35-38, 42-44.  Ms. Lane testified that it was her Department's practice to make written notes of each interview conducted during the course of an investigation.  Ms. Lane also testified that such records would be maintained at least as long as a person was employed.  Item No. 44, Appx. C, pp. 56-57.  Ms. O'Malley described a folder "three to four inches thick."  Richmond Affirmation, Ex. A, p. 36.

During her employment with Defendant, Plaintiff assisted the Human Resources Department with its work.  Based upon that experience, she was aware that when HR interviewed employees in the context of an investigation, a written record of the conversation was prepared and signed by the employee who was interviewed.   Item 43, ¶¶146-150, 368-371.  Plaintiff was also aware of HR's use of audio and video recordings in disciplinary proceedings, and its preservation of those recordings.  *Id.*, ¶ 374.

Defendant maintained an extensive video surveillance system in its call center facility that had the capacity to record.  Item 42, ¶¶ 42; Richmond Affirmation, Ex. A, ¶¶ 42-44.  One of the video cameras was located directly over Plaintiff's work station. Item 42, ¶ 42.  If it were true that Plaintiff often slept at her desk and surfed the Internet, evidence of those activities would have been visible on the camera.

Plaintiff requested both audio and video recordings, and all records pertaining to her job performance in her discovery demands.  Richmond Affirmation, Ex. B and C.  No audio and

3

video recordings exist. The materials turned over from Plaintiff's personnel records do not include signed records of conversation from most of the 33 individuals who allegedly complained about the Plaintiff in 2012. Item No. 51, pp. D421-D442. Plaintiff contends that if such evidence had been available, it would have disproven the allegations about her conduct in 2012.

Plaintiff's last day of work was May 22, 2013; she was placed on a medical leave of absence beginning on May 23. She retained counsel during the summer of 2013, and her then-attorney was in communication with Defendant's then-attorney no later than August 2013. Item 43, Ex. E. Thus, it cannot be disputed that Defendant was aware of the possibility of litigation in this matter no later than August 2013.

## LEGAL ARGUMENT

It is well-established that, "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). "A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

The Court of Appeals for the Second Circuit has held that, "The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence." *Id.* The Court has also held that,

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d, Cir. 2001) *cert. denied*, 534 US 891 (2001).

  Here, Defendant has clearly failed to produce any audio or video evidence that would support its contention that Plaintiff slept on the job, surfed the Internet on the job, or was routinely abusive to her subordinates. Presumably if such records had existed, Defendant would have preserved them. It is clear that as early as June 2012, Defendant was prepared to discharge Plaintiff from employment; to the extent that it had obtained statements from the alleged complainants, they would have been included in Plaintiff's file.

  Defendant preserved records of conversations reflecting interviews of five of Plaintiff's peers and subordinates. Most of those documents have been submitted in support of its motion for summary judgment. Each record of conversation is signed by the person interviewed and a member of the Human Resources Department. Defendant submitted six records of conversation in support of its motion (Items Nos. 35, Ex. E, F; 36, Ex. C, H, I, J): two signed by Ms. Donohue, two signed by Lou Vertino (who has been identified as one of Ms. Donohue's "favorites" by Plaintiff and Ms. Hibbard, Item No. 43 ¶ 167; Item No. 41, ¶ 24) and two by other managers.

  There were two additional signed records of conversation in the records relating to the "33 complaints" in June 2012: one signed by a person named Spencer, Item 51, pp, D430-431, and one signed by Ashanti Lewis, *Id.*, pp. 348-439. Spencer's record of conversation, which accuses Plaintiff of "yelling at the top of her lungs" is noteworthy because it suggests that "all

5

the microphones around the podium had to have picked her up."[2]  *Id.*, p. D430.  There are no recordings of the incident.  There is no audio recording of any such incident.  Presumably, if the recordings of the incident had corroborated Spencer's accusation, the recordings would have been preserved.  The absence of any such recording strongly suggests that the recordings disproved Spencer's accusation.  Defendant's failure to preserve recordings that proved that Plaintiff had not been yelling loudly enough to be picked upon on the recordings deprives Plaintiff of her ability to disprove the accusation.

Similarly, if any of the 29 other individuals who had allegedly complained about Plaintiff had actually complained, Defendant would undoubtedly have preserved a signed record of conversation reflecting what the complainant had said.  The absence of any other signed statements, notwithstanding Ms. Lane's testimony that she interviewed the complainants, strongly suggests that 29 of the 33 alleged complainants did not corroborate the purported "complaints" in the handwritten notes.  Assuming Ms. Lane followed her standard operating procedure and made a written record of conversation from each of those non-complaining individuals, Defendant's failure to preserve those records of conversation deprives Plaintiff of her ability to disprove the accusations attributed to the 29 alleged complainants..

The only alleged witness to Plaintiff sleeping on the job, Lou Vetrino, signed a Record of Conversation on March 13, 2013, stating it had happened "previously in the other office," that it was "an ongoing joke," and that he believed it was still occurring.  Item 36, Ex. H.  It is clear from Ms. O'Malley's affidavit in support of the motion for summary judgment that Plaintiff was under scrutiny by that time.  Item 36, ¶¶ 28-32.  Defendant had more than two months after it

---

[2].    Spencer's record of conversation is also noteworthy because it indicates Spencer is concerned about getting a final warning for swearing.  *Id.*  Arguably, Spencer had a very direct personal interest in discrediting the Plaintiff in any way possible, and in diverting attention from his own misconduct.

obtained Mr. Vertino's statement to observe Ms. Abadir.  If there had been any video evidence to support his allegations, the recordings would undoubtedly have been preserved.  Thus, Defendant's failure to preserve any video recordings of Plaintiff's conduct not only strongly suggests that the video recordings did not corroborate the accusations, but deprives Plaintiff of her ability to disprove those accusations.

## CONCLUSION

Plaintiff has identified evidence, kept in the normal course of Defendant's business, that would have enabled her to rebut much of Defendant's "evidence" of her alleged performance deficiencies.  Assuming she were able to refute those allegations, she would have raised a triable question of fact as to her assertion that Defendant's proffered reasons for the adverse actions against her were pretextual.  Defendant's failure to preserve and produce that evidence is negligent, at the very least, and, at worst, deliberately calculated to prevent Plaintiff from proving her case.  Defendant should not be permitted to benefit from its own negligence or possible deliberate spoliation of evidence.  Plaintiff respectfully requests this Court to draw an adverse inference from Defendant's failure to preserve and produce audio and video recordings of Plaintiff's conduct, and records of conversation from individuals who allegedly complained about her conduct.

DATED:       May 15, 2017
             Buffalo, New York

                     _Anna Marie Richmond_
                     ANNA MARIE RICHMOND
                     Attorney for Plaintiff
                     2500 Rand Building
                     14 Lafayette Square
                     Buffalo, NY  14203-1295
                     716-854-1100
                     annamarierichmondesq@gmail.com